UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| MARVIN DUANE MONK, | ) | |
| | ) | |
| Movant/Defendant, | ) | Criminal Action No. 3:12-CR-120-CHB-CHL |
| | ) | Civil Action No. 3:15-CV-126-CHB-CHL |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER ON OBJECTIONS TO** |
| Respondent/Plaintiff. | ) | **MAGISTRATE JUDGE'S** |
| | ) | **REPORT AND RECOMMENDATION** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Movant/Defendant Marvin Duane Monk's Objections

[R. 116] to the Report and Recommendation of United States Magistrate Judge Colin H. Lindsay

[R. 110], addressing the Motion to Vacate, Set Aside, or Correct Sentence [R. 64] and

supplemental memoranda [R. 83; R. 100; R. 104] filed by Monk.  For the following reasons, the

Court will overrule Monk's objections and adopt the Magistrate Judge's Report and

Recommendation.

I.      **Background Facts**

On August 19, 2012, Sandra Monk discovered that her then-husband Monk had been

engaged in sexual relations with her then-seventeen-year-old daughter ("Jane Doe"), Monk's

stepdaughter. [R. 1 Affidavit p. 1; R. 85 Order p. 2]  Sandra asked Monk to leave their residence

in Louisville, Kentucky. [*Id.*]  Monk left the residence and moved into a motel in Clark County,

Indiana, which is across the Ohio River from Louisville. [*Id.*]

Following Monk's departure, Sandra and her daughter argued. [*Id.*]  Following the

argument, Jane Doe left the residence without telling Sandra Monk where she was going. [*Id.*]

On August 20, 2012, Sandra Monk contacted the Louisville Metro Police Department and

- 1 -

filed a missing person's report for Jane Doe. [R. 1 Affidavit pp. 1–2; R. 85 Order p. 2]  Sandra Monk also filed for and obtained an Emergency Protection Order (EPO) against Monk in Jefferson County, Kentucky. [*Id.*]  The EPO directed that Monk have no contact with Sandra Monk or his stepdaughter Jane Doe. [*Id.*]

On August 21, 2012, Sandra learned that Monk and Jane Doe were staying together in the Star Motel in Clarksville, Indiana. [R. 1 Affidavit p. 2; R. 85 Order p. 2]  Sandra contacted the Sheriff's Department in Clark County, Indiana and informed them of the situation. [*Id.*]  Officers were dispatched to the motel and found Monk and Jane Doe in room 115. [*Id.*]  To the officers on the scene, it was clear that Monk and Jane Doe had been staying in the room together and sharing a bed. [*Id.*]  The officers on the scene arrested Monk for violating an EPO and contributing to the delinquency of a minor. [*Id.*]  The officers transported Jane Doe to a juvenile detention center for being a runaway. [*Id.*]

Upon learning that a sexual abuse incident may have occurred, Clark County Sheriff's deputy Racheal Lee interviewed Jane Doe. [*Id.*]  Deputy Lee conducted the interview at the detention center in Clark County. [*Id.*]  During the interview, Jane Doe disclosed that she and Monk had been in a sexual relationship since December 2011. [*Id.*]  Jane Doe also indicated that a sex tape of her and Monk was in the motel room. [*Id.*]

On August 22, 2012, Deputy Lee interviewed Monk at the Clark County Sheriff's Office. [*Id.*]  After being advised of his constitutional rights and waiving those rights, Monk agreed to be interviewed by Deputy Lee. [*Id.*]  Monk stated that he learned that Jane Doe had left their residence in Louisville and he went to find her. [R. 1 Affidavit p. 2; R. 85 Order pp. 2–3]  Monk admitted that he found Jane Doe and drove her to the Star Motel in Clarksville, Indiana. [*Id.*]  Monk admitted engaging in a sexual relationship with Jane Doe, indicating that most of their

sexual contact occurred in their residence in Kentucky. [*Id.*]  When asked about a sex tape of him and Jane Doe, Monk admitted that one did exist, but he claimed to have gotten rid of it. [*Id.*]  Monk also admitted that he and Jane Doe had exchanged text messages and pictures in which they expressed their feelings for one another. [*Id.*]

On August 22, 2012, the Clark County Sheriff's Department executed a search warrant on room 115 of the Star Motel. [R. 1 Affidavit p. 2; R. 85 Order p. 3]  Some of the items seized included: an 8mm camcorder, a diary or notebook containing letters and handwritten notes, a Blackberry mobile phone, and various 8-millimeter video cassettes. [*Id.*]  One of the 8-millimeter cassettes seized from the hotel room contained footage of Monk and Jane Doe engaging in various sexual activities. [*Id.*]  The video recording is approximately one hour and twenty minutes in length. [*Id.*]  Based on the description of the setting/items in the video tape, Sandra Monk indicated the tape had been made in her bedroom of the residence in Louisville, Kentucky. [*Id.*]

A search warrant was also executed on Monk's iPhone which was located in the Clark County Jail. [*Id.*]  Monk's iPhone contained numerous text messages between Monk and Jane Doe that were of a graphic sexual nature and included images of their genitals. [R. 1 Affidavit p. 3; R. 85 Order p. 3]

On September 6, 2012, the Court issued a criminal complaint and arrest warrant charging Monk with coercion and enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) and coercion and enticement of a minor to engage in sexually explicit conduct for purposes of producing child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e). [R. 1; R. 3]  On October 2, 2012, a federal grand jury indicted Monk on one count of violating 18 U.S.C. § 2422(b) and one count of violating 18 U.S.C. §§ 2251(a) and 2251(e). [R. 13]  The

Court ordered Monk detained pending trial. [R. 12]  At his arraignment, Monk entered a plea of not guilty and the Court ordered him to have no direct or indirect contact with Sandra Monk or Jane Doe. [R. 20]  Monk was represented by retained counsel, J. Bart McMahon. [R. 19]

Despite the Court's order to cease contact with Jane Doe, Monk continued to contact Jane Doe by writing letters to her. [R. 30 SEALED]  Monk sent the letters to his daughter who then forwarded them to Jane Doe. [*Id.*]  The United States discovered what Monk was doing and moved to restrict his mail while in custody due to his violation of the Court's order that he not contact Jane Doe. [R. 28]  Counsel for the United States also advised defense counsel that no plea offer would be made because of Monk's violation of the Court's no contact order. [R. 79 p. 9 n.1]  The District Judge granted the United States' motion and directed the Oldham County Jail to restrict all of Monk's incoming and outgoing mail to matters mailed to and from his attorney or the Court. [R. 32]

Following several continuances, a jury trial was scheduled for October 15, 2013. [R. 22; R. 25; R. 27]  The trial date was subsequently remanded and a change of plea hearing was scheduled for September 27, 2013. [R. 33]

On September 27, 2013, Monk, with the advice of counsel, entered an open plea to both counts in the indictment. [R. 34]  During the change of plea hearing, the Court informed Monk of the rights and requirements set forth in Fed. R. Crim. P. 11(b)(1)(A) through (N) and determined that he understood each of them. [*Id.*]  The Court also determined that Monk's plea was voluntary and not the result of force, threats, or promises. [*Id.*]  The Court advised Monk that he would not have the right to withdraw the plea at a later date, but he could make such a request to the Court. [*Id.*]  The Court found, as required by Rule 11(b)(3), that there was a factual basis for Monk's guilty plea and entered and accepted the plea as to Counts 1 and 2. [*Id.*]  On January 14,

2014, the District Judge sentenced Monk to a period of 240 months imprisonment, to be followed by 12 years of supervised release. [R. 43]  Monk did not file a notice of appeal.

On February 3, 2015, Monk filed his § 2255 motion which challenges his conviction and sentence by raising 52 grounds for relief. [R. 64]  The District Judge referred the matter to Magistrate Judge Colin H. Lindsay pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter. [R. 71]

The United States filed a response to the § 2255 motion. [R. 79]  Monk filed a reply [R. 81] and with leave of Court [R. 82], he filed a supplemental memorandum. [R. 83]  After considering the arguments of the parties and the record, the Magistrate Judge ordered an evidentiary hearing limited to the following issues: (1) the absence of a direct appeal; (2) defense counsel's purported failure to discuss with Monk going to trial as an alternative to an open plea; (3) defense counsel's decision not to pursue motions for suppression of evidence based on possible Fourth Amendment violations; and (4) Monk's claim that he did not receive a copy of the PSR until the date of sentencing. [R. 85]  Additionally, the Magistrate Judge appointed counsel to represent Monk for purposes of preparation for and participation in the evidentiary hearing and any post-hearing briefing required by the Court. [*Id.*]

At the July 24, 2017 evidentiary hearing, Monk called as witnesses his trial counsel McMahon and himself as well as presented seven exhibits. [R. 95 Hearing Transcript pp. 5, 48] The United States cross-examined both witnesses and presented six exhibits. [*Id.* at pp. 25, 57] In compliance with a post-hearing order [R. 93], after the official transcript was filed, Monk filed a post-hearing memorandum, to which the United States filed a response, and Monk filed a reply. [R. 100; R. 103; R. 104]

Magistrate Judge Lindsay issued a Report and Recommendation addressing all fifty-two grounds for relief asserted by Monk. [R. 110]  Magistrate Judge Lindsay recommended that Monk's § 2255 motion [R. 64] be denied and a Certificate of Appealability be denied as to all claims advanced by Monk. [R. 110]  Monk has made three objections. [R. 116]  This matter is ripe for review.

## II.     Standard of Review

### A.  Objections

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Magistrate Judge's Report and Recommendation or else waive his rights to appeal.  When no objections are made, this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 151 (1985).  Parties who fail to object to a Magistrate Judge's Report and Recommendation are also barred from appealing a district court's order adopting that Report and Recommendation. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).

For properly made objections, non-dispositive matters are reviewed under a "limited" standard of review: the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993); Fed. R. Civ. P. 72(a).  Dispositive matters, however, are reviewed *de novo* if a party makes proper objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d.

981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997)).  A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  The Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).[1]

### B.  Applicable Law

Monk's objections concern three claims of ineffective assistance of counsel. *See* [R. 116 pp. 6–19]  To establish ineffective assistance of trial counsel, a movant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The performance inquiry requires the movant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  In making this assessment, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  Further, the Court must determine whether, in light of all the circumstances, counsel's challenged conduct falls outside the wide range of professionally competent assistance. *Id.*  In doing so, the Court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.*  Additionally, the Court

---

[1] To the extent his argument uses the term "overrule" [R. 116 pp. 6, 19], Monk is mistaken.  Magistrate Judge Lindsay has not made a ruling.  Rather, he has made a recommended disposition along with proposed findings of fact in compliance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). [R. 110].  Thus, the Court may accept, reject, or modify the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

"should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The Supreme Court's discussion about resulting prejudice begins with the observation "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, under the prejudice inquiry, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In guilty plea cases, to establish prejudice the movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. For example, if the Court determines the movant fails to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient. *Id.*

## III.    Discussion

Monk asserts Magistrate Judge Lindsay's findings support his claim that McMahon was inexperienced and unprepared to defend in this case. [R. 116 p. 6] Monk contends that in this case McMahon interviewed no witnesses, filed no motions other than to continue, and secretly agreed with the prosecutor to "work on" Monk to get him to plead guilty.[2] [*Id.*] More

---

[2] Although Monk does not specifically base one of his objections on McMahon's statement that he would "work on" Monk, the Court agrees with the Report and Recommendation's conclusion that the totality of the circumstances surrounding this email suggests that McMahon meant that he was going to speak with Monk about his case and the options available to him given the evidence, not that McMahon endeavored to persuade Monk to enter a guilty plea. [R. 110 pp. 29–30]

specifically, Monk objects to Magistrate Judge Lindsay's recommendations regarding three grounds for relief based on ineffective assistance of counsel: (1) counsel's failure to perform any witness interviews or other pretrial preparation (Grounds 6 and 7); (2) counsel's failure to file a motion or motions to suppress (Grounds 13–22 and 24); and (3) counsel's failure to file a direct appeal (Grounds 1 and 2). [R. 116 Objections p. 6; R. 110 Report and Recommendation pp. 26–28, 34–43, 18–23]

### A. McMahon failed to perform any witness interviews or other pretrial preparation.

In his objection, Monk argues the Report incorrectly found that McMahon's failure to investigate does not fall below the objective standard of reasonableness. [R. 116 pp. 7–10, 18] Monk contends the holdings in *Towns v. Smith*, 395 F.3d 251, 258–59 (6th Cir. 2005) and *United States v. Arny*, 137 F. Supp. 3d 981, 983–96 (E.D. Ky. 2015), *aff'd*, 831 F.3d 725 (6th Cir. 2016) are controlling here and require a determination that McMahon's failure to conduct interviews of Sandra Monk and Jane Doe was not objectively reasonable. [*Id.*]  Monk also argues that the Report does not find there was a strategic reason for declining to interview Sandra Monk or Jane Doe, and McMahon did not offer any. [*Id.*]  Monk asserts they were primary witnesses who could have provided useful information for his defense. [*Id.*]  Monk posits that if McMahon questioned how Sandra Monk learned that he and Jane Doe were staying at the motel in Clarksville, Indiana, he might have discovered information useful to undermine the police's alleged probable cause to enter and search the motel room. [*Id.*]  Monk reasons if the evidence found in the motel room had been suppressed, the government would have lacked the principal evidence needed to prosecute the child pornography charge. [*Id.*]  Monk argues the Report's attempt to excuse McMahon's failure to conduct witness interviews is inapt because strong evidence does not relieve counsel of his obligation of diligence, and the government had already

refused to enter a plea agreement. [*Id.*]

Monk's Motion to Vacate alleged that McMahon was ineffective in failing to fulfill his discovery obligations (Ground 6) and to investigate and discuss possible defenses with Monk (Ground 7). [R. 64 pp. 9–12]  In assessing these ineffective assistance of counsel claims, the Report recognized that the relevant question is whether McMahon's assistance was reasonable considering all the circumstances. [R. 110 p. 27 (citing *Strickland*, 466 U.S. at 688)]  The Magistrate Judge found that Monk failed to demonstrate counsel's performance was deficient because McMahon, given all the evidence he reviewed[3], made a reasonable investigation under the circumstances at the time and could have reasonably concluded that no additional investigation was necessary.[4] [R. 110 pp. 26–28 (citing R. 95 Hearing Transcript pp. 12, 32–33)] The Report also found that McMahon, based on the evidence he reviewed, could have reasonably concluded his time was better spent attempting to negotiate a favorable plea agreement for Monk. [R. 110 p. 27]  The Report corroborated this finding by pointing out "[i]ndeed, McMahon advised Monk in an April 18, 2013 letter of this strategic decision, writing that he could not recommend going to trial because 'the conviction would be easily obtained by the government as

---

[3] The Report noted that McMahon testified he reviewed the paperwork generated in Indiana which included what had been filed in the Jefferson Family Court on the domestic violence matters; discovery received from the United States; the search warrants and narrative reports generated by Clark County, Indiana regarding Monk's arrest; the video of Monk's interview by law enforcement in Indiana; Monk's statement; Jane Doe's statement; the videotape made by Monk of the sexual activity between himself and Jane Doe; text messages and photographs sent as text messages between Monk and Jane Doe; and information obtained from Sandra Monk's attorney. [R. 110 pp. 27 (citing R. 95 Hearing Transcript pp. 12, 32–33); R. 95 p. 38]

[4] To reinforce the determination that McMahon could have reasonably concluded that no additional investigation was necessary, the Report quotes part of a sentence from *Rompilla v. Beard*, 545 U.S. 374 (2005).  The quote from *Rompilla* reads "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Id.* at 383.  Monk points out the quote is actually part of an argument by the government that the Supreme Court rejected. [R. 116 pp. 8–9]  While the Report may have mistakenly relied on that quoted line from *Rompilla*, there is Supreme Court precedent holding that further investigation is excusable where counsel has evidence suggesting it would be fruitless. *See Wiggins v. Smith*, 539 U.S. 510, 525 (2003) (citing *Burger v. Kemp*, 483 U.S. 776, 794 (1987); *Darden v. Wainwright*, 477 U.S. 168, 186 (1986); *Strickland v. Washington*, 466 U.S. 668, 699 (1984)).  Thus, the Report's quote from *Rompilla* has not prejudiced Monk.

[Monk] and [Jane Doe] are identifiable on the video and the content satisfies the statutory elements for the production charge.'" [R. 110 pp. 27–28 (quoting R. 97 Gov't's Ex. 3)]  The Report also relied on McMahon's testimony indicating that due to the strength of the prosecution's evidence, his strategy was to get Monk "the best result with a minimum amount of time . . ." [R. 110 p. 28 (quoting R. 95 Transcript p. 40)]

Contrary to Monk's assertion, the Report identified correspondence and testimony from McMahon indicating he had a strategic reason for declining to conduct further investigation that would have included interviewing Sandra Monk and Jane Doe.  Further, the Report's analysis is consistent with the Supreme Court's statement that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  It also comports with the Supreme Court's instruction that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Monk disputes the Report's finding that McMahon could have reasonably concluded his time was better spent attempting to negotiate a favorable plea agreement.  Monk does this by asserting that the government announced it was withdrawing from plea negotiations well before his guilty plea. [R. 116 p. 8]  But the record fatally undermines his assertion.  The Report's finding is substantiated by emails discussing plea negotiations between McMahon and AUSA Lawless through July 17, 2013 [R. 97, Movant's Ex. 5]; McMahon's unopposed motion on July 18, 2013, asking the Court to continue the trial date and extend the plea agreement deadline because the parties needed more time to negotiate a resolution of the case [R. 26]; and the Court's Order extending the plea agreement deadline to September 27, 2013 and moving the trial date to October 15, 2013 [R. 27].  The negotiations continued until the government discovered

that Monk had been surreptitiously sending letters to Jane Doe in violation of the Court's order to cease all contact with her. [R. 97, Movant's Ex. 6; *see also* R. 20; R. 30; R. 32].  On August 28, 2013, the government announced it was withdrawing from plea negotiations because of Monk's conduct. [R. 97, Movant's Ex. 6]  Thus, the government made its position clear one month before Monk entered his guilty plea on September 27, 2013. [R. 34]  Notably, by torpedoing McMahon's efforts to negotiate a favorable plea agreement, Monk put himself in the untenable position of having to decide whether to go on to trial and undoubtedly be convicted on both charges because the evidence against him was overwhelming **or** plead guilty to both charges to reduce his potential sentencing exposure.[5] [R. 95 Hearing Transcript p. 35]

The Court also notes that Monk has not provided any evidence such as testimony or affidavits from Sandra Monk and Jane Doe substantiating his bare assertion that questioning them might have provided useful information for his defense.  At best, Monk speculates that questioning his then-wife might have resulted in the discovery of information sufficient to overcome the issuing judge's probable cause finding on the search warrant for the motel room. [R. 97, Gov't's Ex. 4] *see United States v. Wright*, 343 F.3d 849, 864 (6th Cir. 2003) (the reviewing court must determine whether, in light of the totality of the circumstances, the issuing judge had a substantial basis for concluding that probable cause existed).  Moreover, Monk's rhetoric ignores McMahon's testimony about reviewing the materials filed in the Jefferson Family Court proceedings; the videotape made by Monk of the sexual activity between himself and Jane Doe; the text messages and photographs sent between Monk and Jane Doe; the affidavits, search warrants and narrative reports generated by law enforcement in Indiana;

---

[5] After AUSA Lawless withdrew from plea negotiations, McMahon talked with Monk about pleading guilty to the charges, and what would happen if he went to trial and what a trial would entail. [R. 95 Hearing Transcript pp. 19–20, 34–35]  McMahon also talked with Monk about his sentencing exposure under the Sentencing Guidelines and the impact that acceptance of responsibility could have on his sentence. [*Id.*]

Monk's own statement; Jane Doe's statement; and information obtained from Sandra Monk's attorney. [R. 110 pp. 27 (citing R. 95 Hearing Transcript pp. 12, 32–35); R. 95 p. 38]  Viewing the facts of the case as of the time of his conduct, McMahon complied with his duty to make reasonable investigations and could have reasonably concluded that no additional investigation such as questioning Sandra Monk and Jane Doe was necessary. *See Strickland*, 466 U.S. at 690–91.

Monk's reliance on *Towns v. Smith*, 395 F.3d 251, 258–59 (6th Cir. 2005) is futile because the circumstances are distinguishable.  Defense counsel in *Towns* failed to conduct a reasonable investigation into an eyewitness with significant exculpatory information, failed to call that witness at trial, and counsel's failures prejudiced the defendant's case. *Id.* (eyewitness consistently identified two other individuals who robbed and murdered the victim).  Here, by contrast, McMahon made a reasonable investigation under the circumstances at the time and could have reasonably concluded that no additional investigation such as interviewing Sandra Monk and Jane Doe was necessary.

Monk's dependence on *United States v. Arny*, 137 F. Supp. 3d 981, 983–96 (E.D. Ky. 2015), *aff'd*, 831 F.3d 725 (6th Cir. 2016) is equally unavailing because the circumstances are distinguishable.  Defense counsel in *Arny* failed to conduct a reasonable investigation into several witnesses with exculpatory information, lied to Arny about one of the witnesses, failed to call the witnesses at trial, and those failures prejudiced the defendant's case. *Id.*  For example, Dr. Arny wanted Dr. Saxmon called as a defense witness because she created the pain management treatment plans for the patients that Dr. Arny treated after he replaced Dr. Saxman at the clinic. *Id.* at 987–89.  Dr. Saxman could have explained why she believed her treatment plans were medically necessary which would have rebutted the government's direct evidence

- 13 -

that Dr. Arny could not have had a legitimate medical purpose for prescribing the drugs. *Id.* Further, Dr. Arny submitted six affidavits from previous patients whose testimony would have been helpful if they had been interviewed and called to testify by defense counsel. *Id.* at 989–90. Here, by contrast, McMahon made a reasonable investigation under the circumstances at the time and could have reasonably concluded that no additional investigation such as interviewing Sandra Monk and Jane Doe was necessary.

Additionally, in *Towns* and *Arny* the courts concluded there was a reasonable probability that, but for defense counsel's errors, the jury would have reasonable doubt about the defendant's guilt. *Towns*, 395 F.3d at 260–61; *Arny*, 137 F. Supp. 3d at 991–96.  In contrast to *Towns* and *Arny*, Monk's case involved a guilty plea.  In guilty plea cases where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, "the determination whether the error 'prejudiced' the [movant] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59.  As explained above, Monk torpedoed McMahon's attempt to negotiate a plea agreement with AUSA Lawless.  As a result, Monk put himself in the untenable position of having to decide whether to go on to trial and undoubtedly be convicted on both charges because the evidence against him was overwhelming **or** make an open plea to both charges.  McMahon recommended Monk make an open plea to reduce his potential sentencing exposure. [R. 95 Hearing Transcript p. 35]  Monk has not demonstrated that interviews of Sandra Monk and Jane Doe would have uncovered any evidence that would have led McMahon to change his recommendation as to the open plea.  In sum, the holdings in *Towns* and *Arny* are not controlling here and Monk has not demonstrated the Report erred as to his claim that McMahon failed to investigate or fulfill his discovery obligations.  Therefore, Monk's

- 14 -

objections are without merit and the Court adopts the Report's findings as the opinion of the Court.

**B. McMahon failed to file a motion to suppress based on either the search or the arrest.**

Monk objects to the recommended denial of his claim that counsel was ineffective for failing to file suppression motions on the following three bases: (1) Monk's warrantless arrest in his motel room; (2) a violation of Monk's Sixth Amendment rights; and (3) coercive police activity during Monk's interview. [R. 116 pp. 11–16]  Regarding the first basis, Monk contends that McMahon should have moved to suppress his arrest and all tainted evidence retrieved from the motel room because a clear violation of the Fourth Amendment occurred when police entered his motel room and arrested him on two misdemeanors without a warrant or probable cause and an exigency. [*Id.* at pp. 11–14]  Monk objects to the Report's finding that probable cause existed to make the warrantless misdemeanor arrests *after* police observed what was inside his motel room. [*Id.*]  Monk also objects to the Magistrate Judge choosing not to discuss his challenge to his arrest for violating the EPO. [*Id.*]  Additionally, Monk objects to the Report's finding that exigent circumstances were present to justify his arrest. [*Id.*]

The Report responded to Monk's first basis by acknowledging that police arrested Monk for violating an EPO and contributing to the delinquency of a minor. [R. 110 p. 36 (citing R. 1 Criminal Complaint Affidavit p. 2)]  The Report's discussion of applicable law recognized that police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home or motel room. [*Id.* (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002))]  Further, the Report acknowledged that when there is probable cause to believe that only a minor offense has been committed, exigent circumstances rarely justify a warrantless entry into a home. [*Id.* at pp. 36–37 (citing *Welch v. Wisconsin*, 466 U.S. 740, 753 (1984))]

The Report relied on the affidavits in support of the Criminal Complaint [R. 1] and the search warrant for Monk's motel room [R. 97, Movant's Ex. 4] to ascertain what the officers knew at the time they knocked on the door to room 115 at the Star Motel in Clarksville, Indiana.[6] [R. 110 pp. 37–38]  Implicit from this laundry list of information is that the officers were investigating whether Jane Doe, a runaway juvenile, was with her step-father in the motel room despite efforts by her mother and the Kentucky Family Court to protect Jane Doe from Monk with an EPO.  Further, the officers were aware that the Louisville Police and Kentucky Child Protective Services were investigating allegations of sexual abuse or misconduct by Monk as to Jane Doe.  The Report relied on the affidavits in support of the Criminal Complaint [R. 1] and the search warrant for Monk's motel room [R. 97, Movant's Ex. 4] to determine what evidence was within the officers' plain view when Monk opened the motel room door in response to the officer's knock.[7] [*Id.* at p. 38 (citing R. 1 Affidavit and R. 97, Movant's Ex. 4 Affidavit)] Essentially, the officers saw enough to conclude that Monk had an unfettered opportunity to continue his sexual abuse or misconduct against Jane Doe because they were sleeping in the same bed and were living together in the room as a couple.  Thus, the Report appropriately found that the officers had probable cause to believe that Monk was contributing to the delinquency of a minor, and the obvious threat of further sexual abuse or misconduct to Jane Doe provided the

---

[6] Specifically, the Report indicated the officers knew that Jane Doe, a minor, had been reported missing; Jane Doe's mother had reported that Jane Doe ran away from home; Jane Doe's mother believed her to be possibly in the company of her step-father, Monk; Louisville Police and Child Protective Services were investigating allegations of sexual abuse or misconduct between Monk and Jane Doe; Jane Doe's mother had filed for and received an EPO that required Monk to have no contact with Jane Doe or her mother; Jane Doe's mother believed Monk was staying in a hotel room in southern Indiana; Clarksville police had located a car registered to Monk at the Star Motel; and the Star Motel advised police that Monk was staying in room 115. [R. 110 pp. 37–38]

[7] The officers observed that Monk was wearing nothing but his underwear and appeared to have just awakened from sleep; Jane Doe was also in the motel room; it appeared that both Monk and Jane Doe were staying in the motel room; and it appeared both Monk and Jane Doe had been sharing the double bed in the motel room. [*Id.* at p. 38 (citing R. 1 Affidavit and R. 97, Movant's Ex. 4 Affidavit)]

exigent circumstances to make a lawful entry into the motel room, immediately arrest Monk[8] and separate him from Jane Doe.[9] [*Id.* at pp. 38–39]  Although not mentioned in the Report, McMahon testified that he reviewed the evidence and concluded there was not a good faith basis to file a motion to suppress related to Monk's warrantless arrest in his motel room. [R. 95 Hearing Transcript pp. 38–39]  More importantly, the Magistrate Judge appropriately found that Monk has not demonstrated his Fourth Amendment claim, based on his warrantless arrest in the motel room, was meritorious as required by *Kimmelman*. [*Id.* at p. 39]  Therefore, Monk's objections are without merit and the Court adopts the Report's findings as the opinion of the Court.

Moving to Monk's second basis, he contends McMahon should have filed a motion to suppress his statements made during the interview with Clark County detectives. [R. 116 pp. 14–15]  Monk argues his Sixth Amendment right to counsel was violated because formal proceedings had begun against him that morning, yet he was not given the opportunity to talk to a lawyer before he spoke to the detectives. [*Id.*]  Further, he did not receive any information about the possible federal charges and penalties he was facing. [*Id.*]

These arguments were briefed and considered by the Magistrate Judge.[10]  Objections are intended to identify specific errors in the Magistrate Judge's Report, not to restate arguments

---

[8] Although the officers arrested Monk for contributing to the delinquency of a minor, Indiana authorities ultimately charged Monk with felony child seduction and invasion of privacy. [R. 97, Gov't's Ex. 5]

[9] The Report, having found Monk was lawfully arrested on the charge of contributing to the delinquency of a minor, determined it was not necessary to reach Monk's argument challenging his arrest on the charge of violating the EPO. [R. 110 p. 39 n.12]  This was a sound basis for declining to address Monk's argument.  Therefore, the Court declines Monk's request to consider he intentionally violated the EPO.

[10] The Report found that Monk's Sixth Amendment right to counsel had not been violated because testimony during the evidentiary hearing conclusively showed that Monk was mirandized and executed both a written and verbal waiver of his rights prior to the interrogation. [R. 110 pp. 39–41 (citing R. 95 Hearing Transcript pp. 702–03, 732)] The Report concluded that Monk failed to demonstrate McMahon's decision not to file a motion to suppress on this basis was unreasonable and that the outcome of the proceedings would have been any different. [*Id.*]  Therefore, the Report recommended denial of Monk's claim regarding counsel's failure to file a motion to suppress based on a violation of the Sixth Amendment right to counsel. [*Id.*]

already considered. *See Thomas v. Dep't of Health & Human Servs.*, No. 2:17-CV-02264-SHM, 2017 WL 4839076, at *3 (W.D. Tenn. Oct. 26. 2017) (citing *Davis v. Caruso*, No. 07-10115, 2008 WL 540818, at *2 (E.D. Mich. Feb. 25, 2008) (denying an objection that merely rehashed arguments already considered in the Report and Recommendation)).  "Objections that are merely recitations of the identical arguments that were before the magistrate judge do not constitute specific written objections to the proposed findings and recommendations," and the Court is therefore "not obligated to address" such objections. *England v. Comm'r of Soc. Sec.*, No. 15-12818, 2016 WL 5939288, at *3 (E.D. Mich. Oct. 13, 2016) (internal quotations and citations omitted).  As Monk's objection is merely a recitation of the argument already considered by the Magistrate Judge, the Court declines to review his objection and adopts the Report's findings as the opinion of the Court.

Regarding the third basis, Monk argues McMahon should have filed a motion to suppress his statements to Clark County detectives on the grounds that coercive police activity occurred when Monk was forced to withstand a long interview while experiencing extreme physical pain from broken ribs. [R. 116 p. 15–16]  Monk claims he told the detectives numerous times that he was in pain. [*Id.*]  Monk acknowledges that McMahon claimed to have strategically decided not to file a motion to suppress to avoid Monk being impeached by his level of physical activity in the pornographic video with Jane Doe. [*Id.*]  Monk's objection argues because the video took place before his injury it could not have served as a basis for counsel's strategic decision not to file a suppression motion. [*Id.*]

The Report acknowledged Monk's testimony that hours before the interview he suffered broken ribs as a result of Sandra Monk and her son attacking him in the courthouse hallway. [R. 110 pp. 41–42 (citing R. 95 Hearing Transcript pp. 51–52)]  But the Report noted that Monk

offered no evidence substantiating his claim about the attack, the broken ribs, and experiencing extreme pain. [R. 110 pp. 41–42]  The Report also noted that Monk did not testify he told McMahon about the attack, the injuries, or the pain he experienced during the interrogation. [*Id.*] The Report observed that McMahon's testimony indicated he reviewed the video recording of Monk's interview; he saw nothing that led him to believe Monk was in serious pain or was being coerced in anyway; he viewed the tone of the interrogation as conversational; and he noted that the detectives repeatedly asked Monk if he was comfortable. [*Id.* at p. 42 (citing R. 95 Hearing Transcript pp. 44–45)]  The Report also observed while McMahon recalled that Monk complained to the detectives about an issue with his back, McMahon believed if Monk were to testify about a back ailment making the interview coercive or that he could not continue knowingly, Monk could be impeached with his actions in the pornographic video because of the physical activity he was undergoing in the video. [*Id.*]  The Report found McMahon's testimony regarding the overall tenor of the interrogation more credible than Monk's testimony considering the lack of documentation regarding the attack in the courthouse and lack of documentation of any injuries Monk may have received. [R. 110 p. 42]

Monk's objection to the Report is a non-starter because McMahon's strategic decision was not based on broken ribs Monk purportedly sustained hours before the interview.  Rather, it was based on a preexisting back problem that Monk mentioned to the detectives during the interview.  As to the issue of counsel's performance, the Report relied on the above-mentioned findings to conclude that Monk had not demonstrated McMahon's failure to file a motion to suppress was objectively unreasonable. [*Id.*]  Additionally, the Report observed that McMahon could have concluded his time would be better spent in plea negotiations. [*Id.*]  Regarding the issue of prejudice, the Report found that Monk had not shown but for McMahon's failure to file

a motion to suppress based on police coercion, the results of the proceedings would have been different. [R. 110 pp. 42–43]  Alternatively, the Report noted that the search warrant for the motel room was not issued on the basis of Monk's confession, and the government would have been able to rely on information that Jane Doe provided about the video tape during her interview. [R. 110 p. 43]  For these reasons, the Report recommended the claim be denied. [*Id.*]  In sum, Monk's objection is without merit and the Court adopts the Report's findings as the opinion of the Court.

### C.  McMahon failed to file a notice of appeal.

Monk objects to the Magistrate Judge's finding that Monk has not shown that he gave specific instructions to McMahon to file a notice of appeal.[11] [R. 116 pp. 16–17]  Monk agrees with the Report's description of what occurred on the record at the sentencing hearing. [*Id.*]  Monk contends the Magistrate Judge should have credited his testimony and found that McMahon violated his duties by failing to file a notice of appeal. [*Id.*]  Monk sums up his testimony as showing that he motioned to McMahan at his sentencing hearing that he wanted to appeal, he believed McMahon was coming to the jail to discuss the appeal process with him, but McMahon never came to the jail and he did not take any of Monk's phone calls from the jail. [*Id.* (citing R. 95 Hearing Transcript pp. 55–57)]  Monk also disagrees with the Magistrate Judge's interpretation of an email that Monk's sister sent to McMahon approximately five months after the sentencing. [*Id.* (citing R. 95 Hearing Transcript pp. 55–56)]  Monk asserts that his sister may have used the wrong terminology, but she was requesting information regarding Monk's appellate brief. [*Id.*]

---

[11] The Magistrate Judge noted that a lawyer who disregards specific instructions from the client to file a notice of appeal acts in a manner that is professionally unreasonable and prejudice is presumed in those circumstances without any inquiry into the merits of the appeal. [R. 110 pp. 18–19 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 483 (2000))]  Monk acknowledges that this is the controlling law as to his claim. [R. 116 pp. 16–17]

Essentially, Monk is challenging the Magistrate Judge's factual conclusion that he did not instruct McMahon to file a notice of appeal. Notably, the Magistrate Judge found Monk's post-hearing brief and his evidentiary hearing testimony inconsistent as to the details of how he demonstrated his desire to appeal to McMahon.[12] [R. 110 pp. 19–21] Equally important, the Magistrate Judge pointed out that Monk did not testify he affirmatively told McMahon he wanted to appeal. [*Id.*] Further, the Magistrate Judge noted that McMahon testified Monk never asked him to file an appeal. [*Id.* (citing R. 95 p. 28)] The Magistrate Judge also observed that on cross-examination, Monk made a number of important admissions. [*Id.*] Specifically, Monk admitted that during the sentencing hearing McMahon informed the judge that he would no longer represent Monk after the sentencing hearing concluded; this prompted the judge to inform Monk of the fourteen-day deadline to appeal; and the judge advised Monk that he could ask the Clerk to file a notice of appeal on his behalf. [R. 110 p. 20 (citing R. 95 pp. 56, 60–63)] Additionally, the Magistrate Judge noted that on cross-examination Monk admitted, despite his claimed inability to reach McMahon by phone after the sentencing hearing, he did not ask the Clerk to file a notice of appeal. [R. 110 p. 20 (citing R. 95 pp. 56, 61–63)]

Monk's objection refers to a June 12, 2014 email that his sister, Robin Donaldson, sent to McMahon. Specifically, the email reads:

> I was asked by my brother to contact you to see if you could you [*sic*] please tell me who Duane would contact in order to start the appeal process? I don't know that he has decided to do so, but he would like to have the contact information just to have that option open. Thank you.

---

[12] The Report pointed out that Monk's post-hearing brief asserted that he told McMahon that he wanted to appeal; McMahon promised to visit him in jail on the following Friday to discuss filing an appeal; but McMahon did not visit him after the sentencing hearing, did not accept his phone calls from the jail, and did not file a notice of appeal [R. 110 (citing R. 100 p. 4)] The Report contrasted this with Monk's evidentiary hearing testimony that indicated when the judge advised him of his right to appeal and he "motioned" to McMahon that he wanted to appeal but McMahon asked him to wait until the judge finished speaking. [R. 110 p. 19 (citing R. 95 p. 55)]

[R. 97, Gov't's Ex. 1]  Later that day, McMahon responded by email indicating Monk "was advised in court of his appellate time and to notify me if he wished to appeal so that the federal defender's office could file his appeal." [*Id.*]  Additionally, McMahon stated "I never heard from him.  The time for a direct appeal has passed." [*Id.*]  The Magistrate Judge observed that Donaldson sent the email approximately five months after the sentencing hearing and that it sought information about initiating an appeal. [R. 110 pp. 19–21]  Contrary to Monk's assertion, this is a reasonable interpretation of what the email requested.  Considering the evidence in the record, the Magistrate Judge's interpretation of the email is appropriate.

The Magistrate Judge considered the testimony offered by McMahon and Monk, as well as each party's post-hearing briefing, and decided not to credit Monk's testimony regarding the notice of appeal issue. [R. 110 p. 21]  Based on a consideration of all the factors mentioned above, the Magistrate Judge found that Monk had not shown that he gave specific instructions to McMahon to file a notice of appeal. [*Id.*]  The Court wholeheartedly agrees with the Magistrate Judge's factual conclusion.  In sum, Monk's objection is without merit and the Court adopts the Report's findings as the opinion of the Court.

## IV.    Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings for the United States District Courts, the District Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the movant.  The Court may only issue a COA if a movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "When a district court has rejected a petitioner's claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the District Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

"When a district court denies a Habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*  In this case, reasonable jurists would not debate the denial of Monk's § 2255 motion or conclude that the issues presented deserve to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, a certificate of appealability will not be issued.

## V.    Conclusion

After conducting a *de novo* review of the matters raised by Monk's objections, the Court agrees with the Magistrate Judge's Report and Recommendation.  The Magistrate Judge's analysis of the issues and application of the law are appropriate, and his recommendations are adopted.  Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Report and Recommendation [**R. 110**] is **ADOPTED** as the opinion of the Court;

2. Monk's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.

   § 2255 [**R. 64**] is **DENIED and DISMISSED with prejudice**;

3. No certificate of appealability will issue;

4. A separate Judgment shall issue contemporaneously with this Order.

This the 2nd day of July, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Copies:       Marvin Duane Monk
              Counsel of Record

- 23 -